White, Mayor, et al. v. Board of Education, City of Maysville.

(Decided Feb. 28, 1936.)

**2**

H. P. PURNELL AND COLLINS & COLLINS for appellants.
BROWNING, ZEIGLER & COCHRAN and B. S. GRANNIS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

The parties in this action will be referred to as the council and the board. The council is appealing from a judgment of the Mason circuit court directing it to approve, in modified form, the board's school budget for the fiscal year 1935-36, and to levy a tax at such rate as to meet the requested needs of the Maysville school district for the period named.

Within the time fixed by the statutes (4399-39 et seq., Ky. Stats. Supp. 1934), the board filed with the council its budget, fixing therein a sum estimated for its needs for the coming fiscal period, manifesting a necessity for a levy at a rate of $1.14 per $100 of valuation of property within the district. The council refused to fix the levy at the rate requested, but did levy a rate of $1.02, which apparently was the same rate which had been levied for several years past, at least for the preceding year. A mandamus suit resulted.

In budget the board demonstrated its needs for the period in question to be $91,923.50; that its anticipated income from other sources, and a sum of $1,000 cash in bank, amounted to approximately $19,710, and thus presenting a requirement for such levy as would bring in $72,215.50. It was shown that the taxable property of the district was $6,854,000, and that a levy at the rate named would produce funds to meet the educational needs. With the petition were filed the budget and a financial statement for the preceding school year.

The council filed demurrer to the petition, and,

without waiving same, filed its answer in the first paragraph of which it made a general denial. The answer challenged the allegation that the board required the sum asked "for the prudent operation" of the schools under its supervision. The council charged that the board had underestimated its income "from other sources" than tax by approximately $4,000. The council denied that the budget was made in good faith, or that it truly represented the amount necessary to be raised by a levy, and, while it denies the claimed good faith of the board, it charges affirmatively that the budget was "incorrect and uncandid," in that the board reported anticipated receipts from per capita state funds $11,860, when in fact it would receive $14,756 and reported $850 expected from the vocational board, when it would actually receive $2,000, and that the budget makers failed to disclose a matter of $500 or $600 it would receive by way of interest on daily balances.

In a general way, it is charged that the annual cost of school operation by the present board reflects a far greater per annum cost to taxpayers than is shown in the reports of operation of Maysville schools in former years and of schools of other cities in the same class as, or similar situated to Maysville, and that the cost is more than is reasonable and proper. It alleges a failure on the part of the board to show correct expenditures for the past several years.

In a third paragraph it is alleged that the Maysville district furnishes education for a number of pupils, both in the grade and high schools, who reside in the county outside the district or outside the county, and charges that the cost per pupil in the district is more than $60, or, if investment in buildings and plants, obsolescence, deterioration, and maintenance cost be included, the per capita cost increases to more than $100, while under contract the nonresidents attend the school at a much less cost. From this allegation it is deduced that the board is illegally using the money of the taxpayers of the district for education of nonresidents, which it says in effect is a violation of both the State and Federal Constitutions.

When answer was filed, on the motion of the court the appellee was directed to and filed an amended petition wherein it took up each item exemplified in the budget, and, while it frankly admitted that it had un-

derestimated its probable income from sources other than direct taxation, as, for instance, an increase of $2,856.80 per capita tax and $600 from the vocational board, it also showed specifically that in other items is underestimated expenses by several thousand dollars, equal to or in excess of its underestimate of probable income. On the showing by the amended petition the result was to reduce the requested amount (to be raised by taxation) from $72,213.50 to $71,106.70, a net decrease of $1,106.80.

The council answered by denying the allegations of the petition as amended, and then pleaded that the board had received a small amount more on its 1934-35 budget than it had asked, for which it had not accounted, that it had asked for reimbursement of a note of $5,000, and, in a general way, the answer further compared the budget in question with budgets of several previous school years, and by such comparison showed that the board requested more for the current year than it had for prior years.

The court properly overruled the council's demurrer to the petition [Fiscal Court of Pendleton County v. Pendleton County Board of Education, 240 Ky. 589, 592, 42 S. W. (2d) 885], sustained the board's motion to strike the first paragraph of council's answer, and sustained the demurrers to the third paragraph of the original answer and to the answer as a whole. The cause was submitted on pleadings and exhibits, "and particularly the information contained in plaintiff's (Board's) amended petition therein filed for the advice of the Chancellor," and the court adjudged the board entitled to the relief sought, holding that the rate of $1.02 was insufficient to raise an amount to meet the board's needs for the current year. The court did not order the board to levy the $1.14 rate asked, but directed the board to make such levy as would raise $71,106.70, the amount fixed in the amended petition; the board excepting, but from which ruling it has asked no cross-appeal.

The council complains that the budget originally filed with the council was not made in good faith, and that the court had no right to act upon the amended budget before it had been filed with the council.

Council for appellant does not confine argument or pleading to the original budget. In answer to the

amended petition, it pleads affirmatively that both were "incorrect and uncandid." As shown above, the budget was filed in March of 1935, and the council is directed to make the levy in June. The early filing seems to be required by section 4399-40, Ky. Stats. Supp. 1934. Counsel contends that the budget should have been filed 30 days before the time of making the levy. Regardless of this question, bad faith is not shown by the filing of the budget prior to the time required.

The chief complaint that the budget was incorrect and uncandid, or not made in good faith, appears to be that its receipts (from the state) and its expectancy from the vocational board (a partly federal function) were underestimated and that there was a failure to disclose interest from daily balances. As to this last item, while it is charged that the board failed to declare $500 or $600 it is not charged that such daily balances were received, and in the brief it is explained that there were none to be reported. As to the per capita which in the budget was set up at $11,860 and in the amended petition at $14,716.80, a very reasonable explanation is given in the verified petition, wherein it was shown that the board certified its budget to the state authorities, showing its estimate of the figures first given, and which were increased by the state authorities in October. There is no attempt at explanation of the increase from $850 to $1,450 from the vocational board, except that the board, after making its estimate, received information that the amount would be increased. Its budget for each of the two previous years shows that in one year the board received $800 and in another $850 from the latter source.

When the council answered, charging the underestimates and failures to disclose true income of the board and what it (the council) deemed illegal expenditures, the court on its own motion directed the board to file an amended petition, or it may be called an amended budget, for so it developed to be in character, and the board complied. By this document it showed very satisfactorily, it seems to the court, many items of increased estimated expenditure based not so much on estimates as on then existing conditions, all of which, in so far as was necessary, had theretofore been approved by the higher educational authorities. It is shown by amendment that the board readily admitted and explained its underestimates of receipts, and

admitted that it had asked for $800 for transportation of pupils from a distance, which was charged off in its amendment because, since filing the original budget, failure to make contract had demonstrated that the sum would not be needed. It is developed in the amended pleading that many items to which the board would have been legally entitled had been omitted, so that by a balancing of accounts it appears that the board cut its first estimate by approximately $1,100.

We can see no practical (or legal) reason why there should have been an amended budget filed with the council before the court acted upon the question presented. The filing would have been merely a perfunctory gesture. There is no showing or claim that, if the amended budget had been presented to the council, its action thereon would have been otherwise than it was. It appears that the mayor and entire council were before the court, and a glance at their responsive pleadings shows that they understood and gave the amendment the same consideration as if it had been filed with them.

This court sees nothing so meritorious in the above-discussed objection as would justify it in saying that the court should have uselessly required a submision of the amended budget to the council and at the late day awaited its action thereon. Nor is there so far any showing of bad faith or corruption on the part of the board. Their actions seem to show otherwise. Bad faith is not to be inferred or imputed from mistakes which here are satisfactorily explained. Bad faith and corruption, like fraud, must be clearly charged, and there is here an insufficient charge of bad faith.

With regard to the $5,000 which is included in the budget as ''deficit note at bank,'' it is difficult to understand just what is charged with regard to this item. It is alleged that ''the Board of Education set up a budget for the total operation of the schools * * * for 1934-1935, of $85,616.64; that it actually received the sum of $85,821.00, and yet it submits in its present budget for the school year 1935-36 an item for reimbursement of a note for $5,000.00 and this in the face of section 4399-45, Ky. Stats., which provides. * * *'' That statute is then quoted, and is one which provides a rather severe penalty for a superintendent or board member who shall vote for an expenditure in excess of

the income or revenue for that year as shown by the budget, "Except for a purpose for which bonds have been voted," or in an emergency. It is then said that the board actually received a greater sum than it asked for in its budget, and expended all that sum and in addition the alleged proceeds of the $5,000 note, "less the sum of $1,000.00 which it claims to have on hand, and in addition the payment of a series of notes of approximately $6,000.00 was completed from last year's budget, and yet it is asking $6,000.00 more than it asked in 1934-35."

The allegations here do not come up to what is required in denying the board's request for a tax levy. This item "debt service" in which the $5,000 was included is alleged to have been approved by the state board, and in the brief it is explained that from year to year there had been a failure in anticipated revenues. In 1935 it had fallen off to an amount in excess of $5,000, and in previous years to a considerable amount, and it is pointed out that under decisions of this court the board may legally contract up to its budget allowance, or anticipated revenue though same be not collected. Madison County Board of Education v. Fiscal Court, 246 Ky. 201, 54 S. W. (2d) 652. But, regardless of any explanation by appellees, it is our opinion that the allegations with regard to this item are indefinite and in no sense charge bad faith or sufficiently allege illegality. Breathitt County Fiscal Court v. Breathitt County Board of Education, 191 Ky. 437, 230 S. W. 914; Fiscal Court of Pendleton County v. Pendleton County Board of Education, supra.

As to the charge that the expenditure of moneys collected by taxpayers of the district to furnish transportation or education to persons beyond the boundaries, yet attending both grade and high schools in the district, it is sufficient to say that it is not pleaded in such a way as would properly bring this question before the court. It might be dismissed by pointing out that no taxpayer presents the objection that he is taxed illegally or in a way that would violate the Constitution. The court, of course assumes that the members of the council are taxpayers, but they are not presenting the question squarely nor in such a way as to sustain a defense to the action here. There is no com-

plaint that the acts or laws under which the board must make contracts with neighboring boards or provide transportation are illegal or unconstitutional, nor is it charged that their acts are corrupt or in bad faith.

It is argued for the board, and is no doubt true, that the chancellor was acquainted with the situation, with the conditions, and with the people, and could reasonably conclude that the number of buildings controlled and operated by the board was no greater than necessary for the estimated accommodation of resident pupils; that the overhead would not be increased by taking in outsiders; that no additional expense for teachers, janitors, or other help would be required. No greater number of grades would be required, and it is not charged that the contracts entailed any greater expense than would otherwise result, except in transportation charges, and this item could be easily cared for in making contracts.

Kentucky Statutes Supplement 1934, secs. 4399-51, 4399-52, and section 3479 Ky. Stats, 1930, give the board power to make contracts for the education of nonresidents in the district schools, also to provide for transportation, sharing the cost thereof, and to give credit to nonresident taxpayers who own property within the district on tuition of their children to the amount of the tax paid.

The fact that the board may not, in the opinion of the council, have driven as sharp a bargain as the council might have done, does not make the board's acts illegal, and the council points out nothing done by the board in these respects which would appear to be corrupt or in bad faith.

On the whole case, we can see no real ground for disagreeing with the chancellor in his conclusion, and must therefore affirm the judgment.

Judgment affirmed.